# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan B. Gottschall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 6320 | **DATE** | 9/30/2002 |
| **CASE TITLE** | Abraham Cortez, et al. vs. Medina's Landscaping, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
      ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendants' motion to amend minute order of January 30, 2002 [41-1] is denied without prejudice for failure to comply with N.D. Ill. Local R. 5.3(b). Defendants' supplemental motion for summary judgment [55-1] (actually a motion to compel) is denied. Defendants' motion for summary judgment against plaintiff Albert Padilla [31-1] is denied. Padilla's cross-motion for summary judgment [46-1] is granted. The court hereby enters judgment in favor of Padilla in the amount of $258.00. The remainder of the pending motions will be decided in due course.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | | Document Number |
|---|---|---|---|---|---|
| | No notices required. | | | number of notices | |
| | Notices mailed by judge's staff. | | | SEP 3 0 2002 | |
| ✓ | Notified counsel by telephone. | | | date docketed | |
| ✓ | Docketing to mail notices. | | | | 71 |
| | Mail AO 450 form. | | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | | |
| | courtroom deputy's initials | | 00 SEP 30 PM 3:35 | date mailed notice | |
| | | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ABRAHAM CORTEZ, et al., )
)
Plaintiff, ) Case No. 00 C 6320
v. )
)
MEDINA'S LANDSCAPING, et al., )
)
Defendants. )

**MEMORANDUM OPINION AND ORDER**

Plaintiff Albert Padilla seeks overtime wages and liquidated damages from his former employer, Medina's Landscaping, Inc., and its owner, Robert Medina, under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201 *et seq.* In their first motion for summary judgment, defendants argue that Padilla's suit is barred by the statute of limitations. Padilla cross-moves for summary judgment. Before addressing these motions (which will be resolved in favor of defendants), the court pauses to dispose of a threshold issue.

Defendants have also filed a motion to compel discovery concerning Padilla's (and a co-plaintiff's) citizenship status. This information is relevant, defendants argue, because undocumented aliens are not protected by the FLSA. They base this argument on *Hoffman Plastic Compounds, Inc. v. NLRB*, 122 S. Ct. 1275 (2002), in which the Court held that the NLRB's award of back-pay under the National Labor Relations Act, 29 U.S.C. §§ 151 *et seq.*, to an undocumented alien was "foreclosed by federal immigration policy, as expressed by Congress in the Immigration Reform and Control Act of 1986 (IRCA)." *Id.* at 1278. Critical to the Court's holding was the fact that the work had not been performed and that it would have been illegal for the plaintiffs to mitigate damages, which is required for a back-pay award. *Id.* at 1284-85. *Hoffman* does not hold that an undocumented alien is barred from recovering unpaid wages

71

for work actually performed. *Singh v. Jutla*, 214 F. Supp. 2d 1056, 2002 U.S. Dist. LEXIS 14978, at *12 (N.D. Cal. Aug. 2, 2002); *Zeng Liu v. Donna Karan Int'l, Inc.*, 207 F. Supp. 2d 191, 192 (S.D.N.Y. 2002); *Flores v. Albertson's, Inc.*, No. CV 01-00515, 2002 U.S. Dist. LEXIS 6171, at *18-20 (C.D. Cal. Apr. 9, 2002); *see also Topo v. Dhir*, No. 01 Civ. 10881, 2002 U.S. Dist. LEXIS 17190 (S.D.N.Y. Sept. 11, 2002). Indeed, the Seventh Circuit, in a decision anticipating the *Hoffman* holding, expressly distinguished back pay for labor "not performed" and unpaid wages for work "actually performed." *Del Rey Tortilleria, Inc. v. NLRB*, 976 F.2d 1115, 1122 n.7 (7th Cir. 1992). Defendants' motion to compel is denied.[1]

Turning then to the summary judgment motions, the following facts are undisputed. In July and August of 1998, Padilla worked for defendants longer than 40 hours per week on several occasions. The total number of such overtime hours was 43. Padilla was paid for these hours at his normal rate of six dollars per hour. Padilla's employment with defendants terminated on August 21, 1998. In his deposition, Padilla testified that he first realized defendants were not paying him overtime on August 26, 2001.[2] That same day, Padilla executed a consent to join this

---

[1] Even were this court inclined toward defendants' position (which it is not), their request would be denied as untimely. Discovery in this case closed on January 31, 2001. The holding in *Hoffman* has been the rule in the Seventh Circuit since 1992. *Del Rey Tortilleria*, 976 F.2d at 1115.

[2] This fact does not appear in Padilla's statement of undisputed facts and he mentions it for the first time in his reply brief in support of his cross-motion for summary judgment. Normally, this would preclude Padilla from relying on this fact, but not here. Defendants attempted to incorporate by reference all of the facts contained in two-hundred-plus pages of appendices, which include a complete transcript of Padilla's deposition. Such a blanket incorporation is inappropriate. *See* N.D. Ill. Local R. 56.1(a) ("The statement [of undisputed facts] shall consist of short numbered paragraphs, including within each paragraph specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in that paragraph."). Allowing Padilla to rely on a fact taken from defendants' appendices, given that he at least provides a page reference, seems a fitting penalty in the present circumstances.

lawsuit. The consent was filed on September 20, 2001.[3]

The FLSA requires that covered employees be paid time-and-a-half for hours worked above 40 in a single week. 29 U.S.C. § 216. The default limitations period for an FLSA claim is two years; for a willful violation the period is three years. *Id.* § 255(a). The gap between Padilla's termination and his joining this lawsuit was three years and 30 days. This was (at least) 30 days too late, defendants argue. Why defendants think Padilla's cause of action accrued on the last day of his employment is a bit of a mystery. As a general rule, an FLSA claim "accrues at each regular payday immediately following the work period during which the services were rendered for which the wage or overtime compensation is claimed." *Halferty v. Pulse Drug Co.*, 821 F.2d 261, 271 (5th Cir.), *modified on other grounds*, 826 F.2d 2 (1987) (per curiam). There may well have been some delay between Padilla's termination and final payday, but it would be unreasonable to suppose that the delay was 30 days or longer. Accordingly, the court holds that defendants satisfied their burden of showing that Padilla's claim is presumptively time-barred.

The burden therefore shifts to Padilla, who, to win on summary judgment, must conclusively demonstrate the applicability of an exception to the statute of limitations. *Cf. Cathedral of Joy Baptist Church v. Village of Hazel Crest*, 22 F.3d 713, 717 (7th Cir. 1994). Padilla argues for tolling based on defendants' undisputed failure to post the required FLSA notice. Federal regulations require covered employers to "post and keep posted a notice explaining the [FLSA], as prescribed by the Wage and Hour Division [of the Department of Labor], in conspicuous places in every establishment where such employees are employed so as to permit them to observe readily a copy." 29 C.F.R. § 516.4. The prescribed notice (attached as

---

[3]Strangely, this document does not appear on the docket. It does, however, appear in the appendix to defendants' statement of undisputed material facts, complete with a stamp from the clerk of this court indicating that it was received on September 20, 2001. The court holds that Padilla became a party to this lawsuit on that day.

an appendix to this opinion) emphasizes the right to time-and-a-half pay for overtime and advises that employees should contact the nearest Wage and Hour Division office for additional information.

In support of his tolling argument, Padilla relies on *Bonham v. Dresser Industries, Inc.*, 569 F.2d 187 (3d Cir. 1978), in which the Third Circuit held that an employer's failure to comply with a similar notice requirement under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621 *et seq.*, tolled the running of the 180-day administrative filing period "at least until such time as the aggrieved person seeks out an attorney or acquires actual knowledge of his rights." *Bonham*, 569 F.2d at 193. Padilla argues that the same rule should also apply to toll the period in which an FLSA claimant must file suit, citing *Kamens v. Summit Stainless, Inc.*, 586 F. Supp. 324 (E.D. Pa. 1984). Indeed, *Kamens* squarely holds that an employer's failure to post the notice required by 29 C.F.R. § 516.4 tolls the running of this limitations period. *Id.* at 328. Beyond merely citing *Bonham*, however, the *Kamens* court provided no reasoning for this holding.

Defendants respond with *Kazanzas v. Walt Disney World Co.*, 704 F.2d 1527 (11th Cir. 1983). The district court in that case had held that the employer's failure to post the notice required by the ADEA tolled both the 180-day administrative filing period and the two-year statute of limitations period for initiating legal proceedings. The Eleventh Circuit rejected this approach: "Although in some circumstances the factors mandating tolling of the 180 day provision would also toll the [two-year] statute of limitations, it is important to separately analyze the tolling of each period, as certain factors may only be applicable to one of the periods." *Id.* at 1529. The court began its analysis by observing that "[m]odifying either period because [the plaintiff] did not have knowledge of the ADEA's time requirements contravenes the

normal rule that 'ignorance of . . . legal rights or failure to seek legal advice, does not toll the statute.'" *Id.* at 1530 (quoting *Howard v. Sun Oil Co.*, 404 F.2d 596, 601 (5th Cir. 1968)). The ADEA was not a new law, the court noted, presumably in order to suggest that employees may (or should) know about it. The court went on to explain that the case for tolling was weaker with respect to the two-year court filing period than it was for the 180-day administrative filing period because, unlike the 180-day period, "the approved notice does not even mention the two year period." *Id.* "Additionally," the court concluded, the employer's failure to post an ADEA notice did not toll the two-year limitations period because the plaintiff was generally aware of his right not to be discriminated against on the basis of age. *Id.* at 1530-31.

Defendants focus on the last component of the Eleventh Circuit's analysis. Because Padilla has made no showing that he was unaware of his right to overtime pay, they argue, *Kazanzas* forecloses his claim. This argument has two fatal flaws. First, subsequent case law from the Eleventh Circuit makes clear that the burden to establish Padilla's general awareness of his rights is on defendants, not Padilla. *See McClinton v. Alabama By-Products Corp.*, 743 F.2d 1483, 1486 (11th Cir. 1984) ("If the poster be not posted, the employer will bear the burden of proving that the employee was generally aware of his rights."). Second, Padilla's testimony that he first realized defendants did not pay him overtime on August 26, 2001 is undisputed. It is reasonable to infer that Padilla was previously unaware, even generally, that he was entitled to time-and-a-half pay for hours worked above 40 in a given week.[4]

---

[4]Padilla argues only that this statement indicates that he was unaware of his legal rights, not that he was unaware of the hours he worked each week or his normal hourly rate. Ignorance of the latter type could support a "discovery rule" argument: federal causes of action accrue only when the plaintiff knows or reasonably should have known that he has been injured. It was Padilla's burden to establish this exception to the statute of limitations. This court does not believe Padilla's single statement was sufficient given that he almost certainly knew his hourly rate of pay and the number of hours he worked. The facts were evident even if he did not do the arithmetic.

Another element of *Kazanzas*'s reasoning, however, is generally helpful to defendants. *Kazanzas* warns that the *Bonham* rule should not be automatically applied to toll other limitations periods, even under the same statute. This court agrees that "it is important to separately analyze the tolling of each period, as certain factors may only be applicable to one of the periods." *Kazanzas*, 704 F.2d at 1529; *cf. Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 453 (7th Cir. 1990) ("[Statutes of limitations] protect important social interests in certainty, accuracy, and repose."). Thus, the appropriate question is whether the same factors that led to adoption to the *Bonham* rule with respect to the administrative filing period under the ADEA apply with sufficiently compelling force to the FLSA statute of limitations for filing suit.

*Kazanzas* does little to advance the ball with respect to this critical question. As the Eleventh Circuit expressly recognized, modifying either period equally contravenes the general rule that ignorance of the law is irrelevant for statute of limitations purposes. *Kazanzas*, 704 F.2d at 1530. Neither did the court's observation that the ADEA was not a new statute provide any basis for distinguishing between the administrative and court filing periods—both were in the statute as originally enacted. The only distinguishing factor cited by the Eleventh Circuit was that the prescribed notice specifically mentioned the administrative filing period but not the court filing period. To accord weight to this distinction, however, would be inconsistent with Seventh Circuit case law.[5] "An employer's failure to post notices tolls the charge-filing period 'only until the employee acquires *general* knowledge of his right not be discriminated against on account of age,' not until the employee acquires knowledge of his 'specific rights under the ADEA' or the existence of the specific charge-filing period." *Schroeder v. Copley Newspaper*, 879 F.2d 266, 271-72 (7th Cir. 1989) (quoting *McClinton*, 743 F.2d at 1486) (emphasis in original). A

---

[5]*Antenor v. D & S Farms*, 39 F. Supp. 2d 1372, 1380 (S.D. Fla. 1999), cited by defendants, relies solely on this distinction and is therefore not persuasive.

conspicuously placed notice stating simply that age discrimination is illegal but lacking any information concerning the charge-filing period would put employees on constructive notice of their rights and would be sufficient to preclude reliance on the *Bonham* tolling rule. Specific notice as to the precise filing period is plainly irrelevant in this context.[6]

Defendants offer another distinction. The ADEA administrative filing period is a fixed number of days for all claimants in a state; in contrast, the FLSA court filing period is generally two years, but is three years for willful violations. Defendants argue that tolling the FLSA limitations period where the employer fails to post the required notice would undermine this two-tiered structure. Genuinely uninformed violators will fail both to pay overtime and to post the required notice. For them, the *Bonham* rule could toll the limitations period indefinitely. In contrast, employers who willfully violate the FLSA can take advantage of a definite three-year limitations period simply by posting the notice.

Defendants overstate the conflict between the *Bonham* rule and the two-tiered statute of limitations. A willful violator can comply with the notice requirement only by effectively informing its employees of the violations. The notice, which must be placed in a conspicuous place, lists the minimum wage in massive bold font, and the first highlighted subsection clearly announces the right to overtime pay (see appendix). An employee will have only himself to blame if he fails to file a claim within three years after receiving such clear notice of his rights. It seems plausible to suppose that the increased risk of detection will usually outweigh the statute of limitations advantages to be gained from complying with the posting requirement. Thus, both willful and non-willful violators are likely to be found among the ranks of employers who fail to

---

[6]The court observes that the present ADEA notice makes no mention of the 180-day administrative filing period, advising only that employees suspecting a violation should "immediately" contact the EEOC. *Equal Employment Opportunity (EEO) Poster*, at http://www.dol.gov/esa/regs/compliance/posters/eeo.htm.

post the required notice. Application of the *Bonham* rule would preserve the two-tiered structure within this group—employees complaining of willful violations would have three years to file suit after becoming generally aware of their rights, employees alleging non-willful violations would have two.

The two-tiered structure survives in other respects as well. Non-willful double violators will still end up with a shorter limitations period than the three years allotted to willful violators who comply with the posting requirement if, as seems likely, the former can show that their employees either were already generally aware of their rights under the FLSA or became so within a year after the alleged violation. This burden is not a heavy one. For example, showing that the plaintiff-employee worked for another employer who complied with the notice requirement would suffice. Notwithstanding defendants' exaggeration of the likely conflict, however, a rule with the potential to provide even one willful violator with a shorter limitations period than a non-willful violator creates some tension with Congress's two-tiered structure. At a minimum, this tension calls for more searching inquiry into other similarities and differences between the ADEA administrative filing period and the FLSA court filing period.

In deciding whether to transplant the *Bonham* rule into new soil, it is helpful first to take stock of its roots. By pushing forward the moment at which the limitations period begins to run rather than simply providing a plaintiff with such additional time as he or she reasonably needs, the *Bonham* rule is more an accrual doctrine than it is an equitable tolling principle. *Cf. Cada*, 920 F.2d at 450-51 (explaining that the equitable tolling doctrine does not postpone the date of accrual but merely suspends the running of the statute for a reasonably necessary period of time). When the injury itself is known or reasonably discoverable, a cause of action accrues. That it may take the plaintiff years to discover the legal (rather than factual) basis for his claim is

normally irrelevant. Plaintiffs have a duty to figure out the law on their own. Put another way, there is an irrebutable presumption that plaintiffs either are generally aware of their legal rights or can reasonably be expected to become so promptly after an injury.

Mandating that employers post a notice informing employees of their rights only makes sense on the opposite presumption; if employees generally know their rights or have a duty to learn those rights on their own, notice would be superfluous. An employer who fails to post the required notice is at least partly to blame for the employee's ignorance. As the Seventh Circuit explained in adopting the *Bonham* rule,

> It is quite apparent that Congress imposed [the posting] requirement on employers to insure that protected employees would be fully informed of their rights under the ADEA. And it is equally apparent that this end would not be realized if employers were free to breach the posting requirement without penalty.

*Kephart v. Inst. of Gas Tech.*, 581 F.2d 1287, 1289 (7th Cir. 1978).[7] The penalty under *Bonham* is that the statute of limitations period does not begin to run until an employee becomes aware of his rights. To this extent, the rule shifts the cost of delay due to legal ignorance from the employee to the employer. A general awareness of one's legal rights becomes an essential prerequisite to accrual where the defendant has failed to perform its statutory information-posting obligation.

Several factors lead this court to conclude that something like the *Bonham* rule should apply to the FLSA limitations period for filing suit. Most critically, as under the ADEA, there

---

[7]Defendants' reliance on case law from other circuits questioning or narrowing the *Bonham* rule is misplaced. *See, e.g., Wilkerson v. Siegried Ins. Agency, Inc.*, 683 F.2d 344, 347 (10th Cir. 1982) ("[T]he simple failure to post the notices, without intent to actively mislead the plaintiff respecting the cause of action, does not extend the time within which a claimant must file his or her discrimination charge."). This court is bound by *Kephart*, which remains good law in this circuit. *See, e.g., Unterreiner v. Volkswagen of Am.*, 8 F.3d 1206, 1209-10 (7th Cir. 1993). The Seventh Circuit criticized an entirely different "*Bonham* rule" in *Hamilton v. Komatsu Dresser Industries, Inc.*, 964 F.2d 600, 604 n.2 (7th Cir. 1992).

would otherwise be no statutory penalty for failure to comply with the notice-posting requirement and thus no incentive for employers to comply. *See* 29 C.F.R. § 516.4; 29 U.S.C. §§ 211(c), 215(a)(5), 216(a). Given the strong counter-incentives to hide one's violations from employees and to credibly feign non-willfulness when discovered, the goal of informing employees of their rights stands a chance of realization only through a tolling rule like the one announced in *Bonham*. *See Kephart*, 581 F.2d at 1289 (adopting the *Bonham* rule precisely because the goal of informing employees "would not be realized if employers were free to breach the posting requirement without penalty"). Shifting the cost of delay caused by an employee's ignorance where the employer is at least partly to blame for that ignorance makes every bit as much sense in the FLSA context as it does in the ADEA context. The regulation requiring employers to post the approved FLSA notice manifestly reflects the considered judgment of the Secretary of Labor that employees cannot be reasonably expected to learn about the rights described in that notice (including the right to overtime pay) on their own. As it did under the ADEA, such an assessment of reality trumps the ordinary (and ordinarily quite defensible) legal fiction that individuals know their rights. *See id.* at 1289 (explaining that posting requirement was designed "to insure that protected employees would be fully informed of their rights").

Finally, this court believes that the period for filing a FLSA suit is more analogous to the period for filing an administrative charge under the ADEA—where the Seventh Circuit has expressly endorsed the *Bonham* rule, *Kephart*, 581 F.2d at 1289—than it is to the period for filing an ADEA suit—where the Eleventh Circuit has suggested the *Bonham* rule may be inapplicable, *Kazanzas*, 704 F.2d at 1530. Under the ADEA, the administrative filing deadline comes first. Because the *Bonham* rule protects employees from missing this deadline and the EEOC when contacted can be expected to adequately inform employees of their rights, there is

little need to extend the longer court filing period. The administrative filing deadline will generally be the critical juncture. In contrast, there is no administrative filing period under the FLSA, no right-to-sue letter explaining the process. The court filing deadline is therefore bound to be the moment when FLSA rights are either preserved or lost forever.

The considerations that led the Seventh Circuit to adopt the *Bonham* rule to toll the ADEA administrative filing period apply with equal force to the FLSA statute of limitations. Accordingly, this court holds that an employer's failure to post the notice required by 29 C.F.R. § 516.4 tolls the limitations period until the employee acquires a general awareness of his rights under the FLSA. It is undisputed that Padilla first obtained such knowledge on August 20, 2001, and that he joined this lawsuit less than a month later. Padilla's claim is therefore timely and, since no other facts are disputed, he is entitled to $258.00 in damages.[8]

ENTER:

_____
JOAN B. GOTTSCHALL
United States District Judge

DATED: September 30, 2002

---

[8] In light of Padilla's promptness, this court need not (and does not) decide whether Padilla had two or three years from the moment he acquired general knowledge of his right to overtime (an accrual theory) or whether he had only a reasonable period of time within which to act (an equitable tolling theory). *See generally East v. Graphic Arts Indus. Joint Pension Trust*, 718 A.2d 153 (D.C. 1998) (adopting the latter view with respect to a local anti-discrimination ordinance's limitations period).

## Your Rights Under the Fair Labor Standards Act

# Federal Minimum Wage

## $4.75 per hour
### beginning October 1, 1996

## $5.15 per hour
### beginning September 1, 1997

Employees under 20 years of age may be paid $4.25 per hour during their first 90 consecutive calendar days of employment with an employer.

Certain full-time students, student learners, apprentices, and workers with disabilities may be paid less than the minimum wage under special certificates issued by the Department of Labor.

Tip Credit – Employers of "tipped employees" must pay a cash wage of at least $2.13 per hour if they claim a tip credit against their minimum wage obligation. If an employee's tips combined with the employer's cash wage of at least $2.13 per hour do not equal the minimum hourly wage, the employer must make up the difference. Certain other conditions must also be met.

## Overtime Pay

At least 1½ times your regular rate of pay for all hours worked over 40 in a workweek.

## Child Labor

An employee must be at least 16 years old to work in most non-farm jobs and at least 18 to work in non-farm jobs declared hazardous by the Secretary of Labor. Youths 14 and 15 years old may work outside school hours in various non-manufacturing, non-mining, non-hazardous jobs under the following conditions:

No more than –
- 3 hours on a school day or 18 hours in a school week;
- 8 hours on a non-school day or 40 hours in a non-school week.

Also, work may not begin before 7 a.m. or end after 7 p.m., except from June 1 through Labor Day, when evening hours are extended to 9 p.m. Different rules apply in agricultural employment.

## Enforcement

The Department of Labor may recover back wages either administratively or through court action, for the employees that have been underpaid in violation of the law. Violations may result in civil or criminal action.

Fines of up to $10,000 per violation may be assessed against employers who violate the child labor provisions of the law and up to $1,000 per violation against employers who willfully or repeatedly violate the minimum wage or overtime pay provisions. This law prohibits discriminating against or discharging workers who file a complaint or participate in any proceedings under the Act.

*Note:*
- Certain occupations and establishments are exempt from the minimum wage and/or overtime pay provisions.
- Special provisions apply to workers in American Samoa.
- Where state law requires a higher minimum wage, the higher standard applies.

*For Additional Information, Contact* the Wage and Hour Division office nearest you – listed in your telephone directory under United States Government, Labor Department.

This poster may be viewed on the world wide web at this address: http://www.dol.gov/dol/esa/public/minwage/main.htm

### The law requires employers to display this poster where employees can readily see it.

U.S. Department of Labor
Employment Standards Administration
Wage and Hour Division
Washington, D.C. 20210



WH Publication 1088
Revised October 1996